JOSEPH CARPENTER and GEORGE R. JAQUES *v.* ZACHARIAH JAQUES and PATRICK MOONEY.

Under the act of 1851, "for the better security of mechanics and others in the city of New York," a contractor with the owner for the erection or repairing of a building, cannot summon a claimant, who has acquired a lien for work or materials, to appear and account. (a)

The act makes no provision for a summary proceeding on the part of the contractor, to compel the adjustment of the claim of a sub-contractor.

In this respect the law differs from that of 1844.

The present statute provides but two modes of enforcing a settlement of the claim: one, by the claimant himself, under § 4, against those who are to be affected by foreclosing the lien; the other, by the owner, who, under the fourth subdivision of § 11, may require the claimant to proceed within thirty days, or be barred of his lien.

Accordingly, where *the contractor* served upon *the claimant,* who had effected a lien under § 6, a notice under § 4 to appear in this court and submit to an accounting and settlement; it was *held,* that the court had no jurisdiction, in virtue of the notice last mentioned, to make any order except to dismiss the proceedings.

The act contemplates a proceeding *to enforce the lien,* instituted *by the claimant,* to which *the owner* must be a party defendant, and wherein the extent of the lien—the amount due from the owner—the particulars of his payments—are to be inquired into, and judgment rendered for the enforcement of the lien against the property.

Whether the contractor, where payments due to him are stopped by the claimant's proceeding to obtain a lien, may not *require the owner* to give the claimant the notice provided in § 11. *Quere?*

*It seems,* that if moneys are withheld by the owner, in consequence of the filing of unjust claims, the contractor, in case an adjustment thereof is not enforced under the statute, may invoke the equitable jurisdiction of this court, to compel an inquiry into their validity and amount.

SPECIAL TERM, APRIL, 1855.

Before WOODRUFF, J.

ONE Peter Morris, being the owner of a lot of land in the city of New York, entered into a contract with Carpenter & Jaques, builders, for the erection of a house thereon, and the latter agreed with Jaques & Mooney, stone-cutters, for

(a) See *Butler* v. *Magie, post,* February Special Term, 1856.

brown stone to be used in the construction. The stone was furnished in alleged conformity with the agreement. Subsequently, on the 29th of September, 1854, Jaques and Mooney filed with the county clerk the notice prescribed in § 6 of the "act for the better security of mechanics and others," passed July 11, 1851, and claimed a lien, upon the building and land, for the price of the brown stone.

On the 29th of November, in the same year, Carpenter and Jaques, the original contractors, served upon the claimants a notice, reciting that the latter had filed the notice provided by law to effect a lien, and requiring the claimants to appear in this court, at a specified time, and submit to an accounting and settlement of the amount claimed to be due.

*The notice* last mentioned was entitled in the names of the claimants, Jaques and Mooney, as parties plaintiff, and of the original contractors, Carpenter and Jaques, as parties defendant. The owner's name did not appear in the title, and was not mentioned in this notice, except in the recital therein of the creation of the lien upon his premises.

As the present proceeding before the court was instituted by the original contractors, Carpenter and Jaques, and as the claimants, Jaques and Mooney, now appeared in court in compliance with *their* summons, we have designated *the former* as the plaintiffs, and *the latter* as the defendants. They are thus referred to in the opinion.

On the return day of the notice,

*William R. Stafford* appeared for Jaques and Mooney, the claimants, and insisted that a notice should have been given to the owner; that the present notice was not in compliance with the requirements of the statute; and that Carpenter and Jaques could not compel an accounting and settlement from the claimants.

*Benjamin M. Stilwell* and *S. E. Swain*, for Carpenter and Jaques, the original contractors, insisted, that under the fourth section of the act, the contractor was authorized to bring the

lien to a close, without giving notice of the proceeding to the owner.

WOODRUFF, J.—It appears by the papers and admissions submitted herein, that the parties named as defendants above, did, in pursuance of the act known as the mechanics' lien law, on the 29th September, 1854, file with the county clerk a notice intended to create a lien upon a building situated in Twenty-third street, in this city, whereof one Peter Morris is the owner.

Thereupon, Messrs. Jaques *et al.*, above named, as plaintiffs, served upon the claimants (defendants above) a notice requiring them to appear in this court and submit to an accounting and settlement of the amount of their (the defendants) claim, for the work, labor and materials alleged to have been furnished, &c. The plaintiffs are, it is admitted, the contractors with the owner for the erection of the building in question.

Upon the appearance of the parties, the defendants object to the right of the plaintiffs to take any order in the premises, and deny that this court have, in virtue of the notice served on them, any jurisdiction to compel any accounting, and especially that as their claim is a lien upon the building, and the right, title and interest of the *owner* therein, no order to bring the lien to a close can be made in a proceeding to which he is not a party.

The plaintiffs, in support of this proceeding, rely upon the words of the 4th section of the act of 1851, which provides, that "any contractor or laborer, or any person furnishing materials in pursuance of any contract made by such contractor with such owner or his said agent therefor, may, after such labor has been performed, &c., enforce or bring to a close such lien, by serving or causing a notice to be served personally on such owner, or his agent, contractor or laborer, or person furnishing materials, requiring him to appear in, &c., and submit to an accounting and settlement in, &c., of the amount due or claimed to be due, &c."

If there was nothing else in the act indicating the contrary, and provision had been made for the conduct of the proceedings and for an appropriate order of the court settling the amount as between the contractor and claimant, so as to render such settlement effectual, I should think the confused language of the 4th section was used with a view to enable a contractor, whose moneys were in a manner impounded in the owner's hands, to summon the claimant to an accounting; and an owner also to summon a contractor or claimant to an accounting, as well as to enable the claimant himself to institute a proceeding and obtain a judgment or decree for the satisfaction of his lien. And yet I can hardly see the propriety of the words, "*enforce or bring to a close the claimant's lien*," if contesting and defeating it by a proceeding in favor of the owner or contractor, was intended to be embraced by the section.

It is undoubtedly very desirable that a contractor who has money due to him from the owner, should, when claims are filed which he deems unjust, or for which he is not liable, have some means to compel an inquiry into their validity and amount, and not be compelled to suffer his money to remain subject to the ultimate settlement of the lien by a proceeding which neither owner nor claimant may choose to prosecute for many months. And if the section referred to does not authorize him to take measures for that purpose, under the provisions of the act in question, I have no doubt of his right to invoke the jurisdiction of this court as a court of equity for that purpose.

Upon a comparison of the present with our former lien laws, (see act of 1844, relating to the several cities in the state, Sess. Laws of 1844, chap. 305, §§ 4, 5, 6, 10; Act of 1844, relating to the city of New York, §§ 4, 5, 6, 10; Sess. Laws, 1844, chap. 20,) it will be perceived that those acts contemplated a proceeding on the one hand by the claimant to enforce his lien, and on the other hand by the owner to compel an adjustment and settlement of the amount claimed. But even those provisions, so far as con-

tained in sections 4, 5 and 6, only provided for the appearance of the owner to defend, on penalty of judgment by default, and for the appearance of the contractor, laborer or person furnishing materials, on penalty of *losing the benefit* and *being precluded* of his lien.

These sections did not provide for any inquiry between the *claimant and contractor* merely.

But section 10 of the above acts does provide for that inquiry, and requires the claimant to institute proceedings against the contractor directly to settle the amount due, whenever the claimant is not himself the contractor but the person performing labor or furnishing materials in pursuance of an agreement made by him with the original contractor.

Now it is obvious that in those acts the language of the 4th section, from which the 4th section of our present law was in part copied, although not very aptly expressed, had significance, and could be applied to the various steps in the proceedings which were to follow.

In transcribing this 4th section into the law of 1851, the provision that the owner may give the notice to appear is entirely omitted ; and in lieu thereof, a provision is made in section 11, sub. 4, that he may require the claimant to institute the proceeding, and in default thereof the lien is to cease ; and in suffering the words to remain, which seem, at first reading, to indicate that a contractor may give the notice to a claimant to appear and submit to an accounting, the legislature, or he who prepared the act, seem to have overlooked the circumstance that no provision is made for any subsequent steps to be taken between such contractor and claimant, even if they do appear and account together ; and in case they do not appear, no order can be made against either.

Indeed, the whole act read together, I think, clearly shows that this section, as it stands in the present law—in connection with the other sections of the act—contemplates a proceeding to *enforce the lien* to be instituted by the *claimant*, to which the *owner* must be a party defendant, and in which

the extent of the lien, the amount due from the owner, the particulars of his payments, are to be inquired into, and judgment for the enforcement of the lien against the property is to be rendered.

Thus the proceeding is called, in section 4, a proceeding " to enforce or bring to a close such lien"—not a proceeding " to *avoid or discharge* the lien." By section 5, at the time, or within fifteen days after the service of the notice to appear, a bill of particulars of the claim shall be served personally on *such owner*, showing that he is the party against whom the proceeding is to be taken. And by section 7, in case the *owner* shall not appear, a writ of inquiry shall be issued to the sheriff to assess the amount of the claim, and judgment shall thereupon be entered by default. Under the former acts it was provided, as before suggested, that when the owner gave the notice (or in the cases mentioned the contractor gave the notice) to the *claimant*, and the claimant did not appear, he lost the benefit of his lien, and was precluded thereof. No such clause is contained in our present act ; nor is there any thing to warrant any such order.

It may, therefore—as a means of testing the right of the contractor to summon the claimant to appear and account—be significantly asked, suppose he disregards the notice and does not appear, what steps can be taken against him ? The act is silent. The former provision, that under similar circumstances he should lose the benefit of his lien, is repealed, and not inserted in the new law ; and no authority is given to the court to make any order on the subject.

On the other hand, if the claimant does appear and account, the court can render no judgment for the enforcement of the lien. The proceedings could not, in the language of the 11th section, be called an action for the enforcement thereof, because he against whom the lien is to be enforced, if it is enforced at all, is a stranger to the proceeding.

Plainly, I think, our present law contemplates two modes of compelling inquiry and a settlement of the claim ; the one by the *claimant* against those who are to be affected by

enforcing the lien, the other by the owner, who, by section 11, sub. 4, may require the claimant to take such proceedings within thirty days, or be barred of his lien.

And although I think it very desirable that a contractor should have some summary mode of compelling the adjustment of the claim, which may operate very harshly in preventing his recovering from the owner what is due to him—which means the contractor had under the law of 1844, as before suggested—I think that the present law has made no provision for such a proceeding on his part; and, therefore, he is left to some remedy founded in the equitable jurisdiction of our courts, unless he is permitted, as perhaps he may be, upon some general principles applicable to the relation in which he stands to the owner, to *require him* to give the notice provided for in section 11.

My conclusion is, that the court have no jurisdiction, in virtue of the notice served on the defendants, to make any order in the premises other than to dismiss the proceedings.

Proceedings dismissed.